49 CCPA

**Application of Austin G. TALBERT.**
**Patent Appeal No. 6722.**

United States Court of Customs
and Patent Appeals.
Nov. 17, 1961.

Cromwell, Greist & Warden, Chicago, Ill. (Fred S. Lockwood, Chicago, Ill., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 5 and 6 in application Ser. No. 386,737, filed February 14, 1955, for "Mobile Crane Mounting." Claims 3 and 4 are allowed.

The claimed invention relates to the combination of a truck tractor, a semi-trailer, and a crane unit mounted on the semi-trailer. The crane unit is provided with a power plant, independent of that of the truck tractor, and there is a drive connection between the crane power plant and the wheels of the semi-trailer to assist the tractor in moving the semi-trailer under difficult conditions on the work site. The crane power plant is, of course, adapted to operate the crane itself when the tractor and semi-trailer are not in motion. Specific gearing and clutch mechanisms are incorporated in the mechanism of the invention to allow the crane power plant to perform its separate functions.

Appellant states in his specification:

" * * * the invention relates to such a mobile crane unit wherein disconnectable power-transmitting means are provided for driving the wheels of the semi-trailer from the independent power plant of the mobile crane so that in places where movement is extremely rough and difficult, the *unit can be moved through the combined power and traction of the truck tractor unit and of the semi-trailer powered from the crane power plant.* [Emphasis ours.]

\* \* \* \* \* \*

"An important object of the invention is economical and rugged slow speed drive connection between the power plant of the crane mounted on a semi-trailer and the trailer wheels, which drive connection will not ordinarily be transmitting power either during operation of the crane or during cross-country movement of the crane, but which can be connected in power-transmitting relationship when there is a need for extra power

[1]. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

and traction to move the crane unit * * *."

Appellant states in his remarks:

"During normal cross-country transport on paved highways the crane motor is not operated since then the truck-tractor is more than adequate to propel the entire unit under these normal transport conditions."

The issues on appeal center around the patentability of the specific driving means interconnecting the crane motor with the semi-trailer wheels.

The claims on appeal are:

"5. A mobile crane unit of the class described comprising in combination, a truck tractor having multi-speed transmission means whereby said truck tractor may be propelled at speeds ranging from a relatively high speed for cross-country highway transport down to a much slower speed primarily for movement at a work-site off a highway, a semi-trailer, hitch means for hitching the front end of said semi-trailer to said truck tractor, a crane mounted on said semi-trailer having its own power plant and drive means for operating the crane therefrom, and power-transmitting means for operatively connecting wheels of said semi-trailer in driving relationship from said crane power plant, said power-transmitting means comprising one portion which is operably connected with said crane power plant and adapted only for slow speed movement at approximately the same as the low speed range of said truck tractor transmission and another portion permanently connected in driving relationship with said semi-trailer wheels adapted for a speed range coextensive with said speed range of said truck-tractor, and clutch means for operatively interconnecting said low speed power-transmitting portion in series with said other portion whereby said power-transmitting means drives said semi-trailer wheels only at slow speed, and said semi-trailer wheels drive said other portion at all times that the crane unit is propelled by said truck tractor alone.

"6. The mobile crane unit called for in claim 5 wherein said low speed portion of said power-transmitting means includes part of said drive means for operating said crane."

The references relied on are:

| | | | | |
|---|---|---|---|---|
| Brun | 1,408,263 | Feb. | 28, | 1922 |
| Kellar | 2,140,109 | Dec. | 13, | 1938 |
| Zeilman | 2,157,376 | May | 9, | 1939 |
| Baker | 2,162,994 | June | 20, | 1939 |
| Zeilman et al. | 2,674,333 | April | 6, | 1954 |

*Zeilman* is the basic reference. What it discloses is an issue in this case. Indisputably Zeilman discloses the combination of a tractor, a semi-trailer, and a crane mounted on the semi-trailer. The examiner and the board both found that Zeilman discloses that the motor for his crane is connected to the semi-trailer wheels. Appellant disagrees. We shall consider this question anon.

*Kellar* shows the combination of a tractor and semi-trailer wherein the semi-trailer, which has nothing on it but a flat platform, is provided with a "booster engine" beneath the platform having driving connection with the trailer wheels through a hydraulically operated clutch, a transmission, and drive shaft under the control of the tractor driver. Kellar shows no crane. The Kellar specification states:

"With the increasing use of modern high speed trucks and trailers * * * there is a tendency to con-

struct the [truck and semi-trailer] units of such size that there is no great amount of reserve power. Thus, when hills, muddy roads, sand, etc., are encountered, there is a tendency to stall and it is often necessary to operate the truck in low gear for many miles.

"To overcome this difficulty it is my principal object to provide a truck and trailer unit in which the trailer is equipped with a booster engine arranged *for selective driving connection* with the trailer wheels; the engine mounted on the trailer being controlled from the truck cab by flexible remote control means which are operative regardless of the angular position of the trailer relative to the truck." [Emphasis ours.]

*Brun* discloses a self-propelled crane in which power from an engine is used both to operate the crane and to actuate the wheels of the mobile unit which carries the crane. This reference discloses clutch mechanisms by which the power from the crane engine can be directed either to drive the mobile unit or to operate the crane.

*Baker* discloses an excavating shovel mounted on the top of the transmission case of a tractor, the tractor having a conventional power take off with means provided in the excavating shovel mounting means whereby the power take off may be readily utilized for driving the rotating parts of the excavating shovel.

*Zeilman et al.* discloses the same basic combination as that disclosed by appellant except that the truck tractor and the crane-supporting portion of the unit have a common chassis. In other words, there is no semi-trailer connected through a fifth-wheel with a tractor but, instead, a heavy truck chassis on which a crane is mounted. The crane has its own motor and it can be connected through suitable transmission gearing to the truck wheels, which are driven on the highway only by the truck engine. The specification says that the crane unit can be "either self-propelled by [crane] engine 5 and/or propelled from the automotive source of power 23," which is the engine of the truck chassis.

The examiner and the board rejected claims 5 and 6 as unpatentable over the disclosures of Kellar or Zeilman in view of the subsidiary references Brun, Baker, and Zeilman et al.

As stated above, what Zeilman discloses is in dispute. The portion of the Zeilman disclosure relied on by the examiner, the board, and the solicitor is in the introductory portion of the Zeilman specification. It says:

"This invention relates to load handling machines, including a boom of the semi-trailer type adapted to be drawn by a motor truck and more particularly to means controlling boom movement during travel.

"Load handling machines of the semi-trailer type are adapted to be moved from one location to another by motor power furnished from a motor truck or the like rather than under power from the load handling machine itself. *Although the load handling machine may be movable under its own power at the scene of operation,* it is desirable, in order to expedite movement from one scene of operation to another, that the machine be moved by independent automotive trucks." [Emphasis ours.]

We agree with appellant's contention that Zeilman does not disclose that *his* vehicle has any driving connection between the crane motor and the semi-trailer wheels. The statement relied on by the Patent Office appears to us to be a reference to the prior art and says that machines of this type *may* be movable on the job under power provided from the load-handling machine. Appellant suggests that such movement might even be a winch but we find in the above quotation a fair suggestion to move such machines by a driving connection between

its wheels and a crane engine, even if Zeilman does not show such a connection in his own machine. This teaching must be read with the other art of record.

We feel that the combination of the appealed claims is clearly unpatentable in view of disclosures which are less ambiguous than that of Zeilman. Zeilman et al., for example, discloses the combination of a truck tractor, a crane having its own power plant, power means connecting the wheels of the crane-supporting vehicle in driving relationship with the crane power unit, and that either or both engines can be used to move the unit. Surely no case for patentability can be based on the fact that appellant's vehicle is jointed in the middle, being a tractor and semi-trailer combination instead of the unitary truck body of Zeilman et al. These are but two well-recognized equivalents in the vehicle art. It would appear that appellant does not dispute this but bases his argument for the patentability of claims 5 and 6 "on a special or unique type of driving connection interconnecting the crane motor with the semi-trailer wheels."

Appellant states that his "real contribution to the art" is the provision of "an economical driving means, (both from the standpoint of maintenance and original cost) for interconnecting the crane motor with semi-trailer wheels." The economical aspects of appellant's invention are alleged to lie in the three-part construction of the "power transmitting means" recited in claim 5. This means is recited as being composed of a first portion, divisible into two parts, viz., the crane drive itself and a connecting part for operating the wheels, "*adapted only for slow speed movement* at approximately the same [speed] as the low speed range of said truck tractor transmission" [our emphasis] and a second portion "adapted for a speed range coextensive with said speed range of said truck-tractor," i. e., a high speed portion which is standard automotive equipment, mass-produced and hence not costly. As stated in the specification, this construction allows the connecting part of said first portion to be more economically produced because it moves only at low speeds. That is to say, cheap gears can be used because expensive high speed gears are unnecessary.

With respect to this contention, we agree with the following argument of the solicitor:

"Appellant's assertion that the transmitting means comprises 'two different kinds or types' of driving portions finds response in claim 5 only in two 'adapted' clauses which appear to define a mode of use rather than a distinction in structure. A gear, for example, could be 'adapted' for use at high speed and yet have the same structure as one to be used only at low speed."

Furthermore, it is our opinion that what applicant relies on for patentability is just commonplace engineering practice.

It is clear that no *structural* limitations have been set forth in either of the claims on appeal which would result in the claimed driving means being economical to produce.

The limitation which claim 6 adds to claim 5 is plainly not of patentable significance. It would be obvious to a worker of ordinary skill in the art to utilize a part of the existing drive means for operating the crane as a portion of the drive means for the semi-trailer wheels.

In addition to the two "portions" of the power-transmitting means, applicant appears to place some reliance on the clutch which is claimed as interconnecting the low-speed portion of the gear train with the high-speed portion, this placement making it possible to disconnect all of the slow-speed gearing from the wheel assembly when on the road so that slow-speed gears are not driven fast and drag is not unnecessarily inserted in the system. We think that such placement of the clutch would have been obvious to an ordinary mechanic.

In summation, nearly the whole of the claimed invention is shown in the prior art and when the disclosures of that art are subtracted from the claimed subject matter all we have left are minor details of a clearly obvious nature. As to this conclusion there is no doubt which can be resolved in applicant's favor.

For the above reasons, the board's decision is affirmed.

Affirmed.